## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| DARSHAWN T. MCCORMICK, | CASE NO. 5:20-CV-00892-PAB |
| Petitioner, | JUDGE PAMELA A. BARKER |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN KEITH SMITH, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On April 24, 2020, Petitioner Darshawn McCormick, a prisoner in state custody, filed a Petition *pro se* seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). On July 17, 2020, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge to prepare a Report and Recommendation. (Non-document entry of July 27, 2020). On May 26, 2021, the matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 26, 2021).

On October 2, 2020, Respondent Keith Smith,[1] in his official capacity as Warden of Mansfield Correctional Institution, filed a Return of Writ. (ECF #8). Mr. McCormick filed a

---

[1]      Respondent notes that Ed Sheldon is the Mansfield Correctional Institution Warden. (ECF #8 at PageID 34, n.1). As of the date of this Report and Recommendation, however, the Ohio Department of Rehabilitation and Correction's website identifies Tim McConahay as that facility's current Warden. https://drc.ohio.gov/about/facilities/mansfield-correctional (last accessed Apr. 5, 2023). For the sake of convenience, in the balance of this Report and Recommendation, I refer to the Respondent as "the State."

Traverse on July 13, 2021 (ECF #10) and the State filed a Sur-Reply to the Traverse on July 26, 2021 (ECF #11). The District Court has jurisdiction over the Petition under § 2254(a).

For the reasons discussed below, I recommend the Petition be **DISMISSED** in its entirety. I further recommend the District Court not grant Mr. McCormick a certificate of appealability.

## PROCEDURAL HISTORY

### A.    Factual Background

In habeas corpus review, state court factual findings "shall be presumed to be correct" and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir.), *cert. denied*, 571 U.S. 1077 (2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001), *cert. denied*, 535 U.S. 966 (2002). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial record. *Mitzel*, 267 F.3d at 530.

In affirming Mr. McCormick's conviction and sentence, Ohio's Ninth District Court of Appeals made the following findings of fact:

> {¶2} The victim in this matter was gunned down in broad daylight just outside the apartment that he shared with his girlfriend. Three men were seen running from the scene, one of whom was later identified as McCormick. The police were unable to apprehend McCormick that day because, as an officer stopped the vehicle in which McCormick was riding, he jumped from it and fled on foot. Nevertheless, the police were able to apprehend one of the other men who had been with McCormick, and he led them to evidence that helped identify McCormick as the shooter. That evidence included the sweatshirt McCormick had been wearing that day, which tested positive for gunshot residue. Additionally, the police discovered at McCormick's residence a partially loaded magazine containing the same model and caliber bullets used to kill the victim. After interviewing McCormick and collecting additional statements, the police arrested him.

* * *

{¶8} At the time of his death, the victim and his girlfriend had been dating for several years and had been sharing an apartment for about nine months. Before they began dating, the victim had been romantically involved with J.D., another local woman. The victim's girlfriend testified that she and J.D. had never met in person, but had engaged in online disputes for several years. In the days leading up to the murder, they posted disrespectful messages about each other on social media, and J.D. boasted that she had a new man in her life. A picture that J.D. posted in response to one of the girlfriend's messages depicted J.D. and her new man, E.A., with two guns lying across his chest.

{¶9} The victim's girlfriend testified that, on the day of his murder, the victim was outside with a local mechanic, whom he had called to fix his car. The car was parked in a small lot just outside their ground-floor apartment. The girlfriend testified that she was inside their apartment when several gunshots rang out. Immediately running outside, she saw the victim lying on the ground and three men running away. As she screamed at them, one turned his face toward her, and she was able to recognize him as E.A. The girlfriend did not recognize the other two men and never saw a gun. Yet, she noticed that two of the men had on dark colors and the third had on a red sweatshirt. She could not recall which color E.A. was wearing, but grabbed her phone and showed the mechanic the picture of E.A. that J.D. had posted a few days earlier. The mechanic confirmed that E.A. had approached the victim and had argued with him about a female. He also indicated, however, that E.A. was not the man who had shot the victim. The mechanic told the girlfriend that the shooter was the man standing behind E.A.

{¶10} The mechanic testified that he had been working on the victim's car for a few hours when the shooting occurred. As he was gathering his tools, three men walked up and one of them, who was dressed in red or orange, began speaking with the victim about things that had been posted on social media. The two other men were dressed primarily in darker colors, but the mechanic denied having gotten a good look at their faces. He testified that, as he was walking to his vehicle with his tools, he heard several gunshots, dropped down, and ran. As he ran, he glanced back and saw that one of the men had a gun. The mechanic testified that the man with the gun was the tallest of the three and was not the man dressed in orange/red. The State then showed the mechanic a still photograph taken from a surveillance video at another apartment complex. The photograph captured three men, one of whom had on an orange/red sweatshirt and two of whom were trailing behind him. Other witnesses confirmed that third man in the photograph, who was wearing blue jeans beneath a dark jacket, was McCormick. After reviewing the photograph, the mechanic stated that the third man (McCormick) was the one he saw holding the gun.

{¶11} Officer Jeffrey Lamm began responding to the scene of the shooting when dispatch reported it. He also learned from dispatch, however, that he should be on

the lookout for a blue minivan and a man wearing an orange hat, as both were potentially linked to the shooting. As he was nearing the area of the shooting, Officer Lamm spotted a blue minivan with an orange hat lying on its center console. Accordingly, he activated his lights and stopped it. Within seconds of the minivan stopping, a man in blue jeans and a dark, puffy coat darted out and ran off. Although Officer Lamm attempted to follow the man in his cruiser, he abandoned his effort when he came to a dead-end street. He then turned around and returned to the minivan. Inside, he found an older gentleman, his wife, and E.A.

{¶12} E.A. testified that, on the day of the shooting, two older friends gave him, McCormick, and a third male, M.G., a ride to the victim's apartment complex in their minivan. E.A. had other business there that day, but decided to talk to the victim when he happened to see him outside. According to E.A., McCormick was behind him on his left-hand side as he spoke with the victim and M.G. was behind him on his right-hand side. He testified that his conversation with the victim was just getting heated when gunshots rang out from his left-hand side. He, McCormick, and M.G. then fled and returned to the minivan. E.A. denied shooting the victim himself and further denied that M.G. could have been the shooter. Though he never affirmatively testified that McCormick was the shooter, he stated that he was "disgusted" when he returned to the minivan because he felt McCormick had betrayed him, the shooting was not supposed to have occurred, and it "put people in positions people shouldn't have been in." Moreover, when asked why McCormick had shot the victim, E.A. did not deny that he had. Instead, he testified: "No reason. He wanted a name. He wanted everybody to know who he was." He confirmed that McCormick ran from the minivan when a police officer stopped it, and M.G. walked away when the officer left to chase McCormick. E.A. testified that he remained in the minivan because he had nothing to hide and no reason to run.

{¶13} J.D., the woman who was romantically involved with E.A., testified that she was at home with him the morning of the shooting. In the early afternoon, McCormick and M.G. arrived at her apartment and stayed for a short while before the three men left together. J.D. confirmed that a still photograph taken from the surveillance footage at her apartment building depicted the three men leaving. Specifically, it depicted (1) E.A. in the lead, wearing an orange/red sweatshirt, (2) M.G. following behind him in all black, and (3) McCormick securing the rear in a black jacket and blue jeans.

{¶14} J.D. was still home later in the day when someone started pounding on her door. When she opened it, M.G. ran inside followed closely behind by McCormick. The two men did not say anything to J.D., but began pacing around the room. After a few minutes, they went upstairs and removed their hooded sweatshirts. Additionally, M.G. removed his shoes. According to J.D., McCormick

4

asked her for bleach, but she did not have any. The men then left without taking the sweatshirts or the shoes.

{¶15} E.A. testified that, the following day, he took the two sweatshirts and the shoes from J.D.'s apartment and brought them to his grandmother's house. The police then collected the items once E.A. told them where they could be found. Forensic testing confirmed the presence of gunshot residue on the cuffs of both sweatshirts. Additionally, DNA testing confirmed the presence of male DNA on each sweatshirt, with the profile on one sweatshirt being consistent with McCormick and the profile on the second sweatshirt being consistent with M.G. Though gunshot residue was found on both sweatshirts, experts testified that gunshot residue can settle on anyone in close proximity to a shooting. They further testified that gunshot residue can be transferred between articles of clothing when they are stored together.

{¶16} The police recovered five shell casings from the murder scene, and there was testimony that all five casings were .40 caliber Smith and Wessons. A forensic scientist examined the casings and determined that all five had been fired from the same gun. Though the police never located the gun, they did uncover ammunition and a partially loaded magazine when they executed a search at McCormick's residence. The partially loaded magazine was a Smith and Wesson, and the bullets it contained were .40 caliber Smith and Wesson rounds. The police also found many more rounds for a semiautomatic assault rifle.

{¶17} Former Lieutenant David Laughlin interviewed McCormick a few days after the shooting. He testified that McCormick was not entirely forthcoming during his interview, but did admit that he was present for the shooting and that he ran from the minivan when a police officer stopped it. McCormick told the lieutenant that neither E.A., nor M.G. could have been the shooter because E.A.'s dominant hand had been injured and M.G. had walked away before the shooting had begun. McCormick claimed that he never saw the shooter and that he too had already walked a considerable distance away before the gunshots rang out. He initially failed to tell the police that he went to J.D.'s apartment after the shooting, but reluctantly agreed that he had done so when pressed on that point. Nevertheless, he denied owning or having worn either of the two sweatshirts left at her apartment.

*State v. McCormick*, No. 29121, 2019 WL 2385648, at *1-4 (Ohio Ct. App. June 5, 2019).

## B.  State Conviction

On March 2, 2017, a grand jury indicted Mr. McCormick on one count of murder (Ohio Rev. Code § 2903.02(A)), one count of felony murder (Ohio Rev. Code § 2903.02(B)), one count

of felonious assault (Ohio Rev. Code § 2903.11(A)(2)), and one count of having weapons under disability (Ohio Rev. Code § 2923.13(A)(2)). (ECF #8-1 at PageID 93-94). On May 25, 2017, a supplemental indictment added a firearm specification (Ohio Rev. Code § 2941.145) to the murder and felonious assault charges. (*Id.* at PageID 95-96). At his arraignment, he pled not guilty to all of the charges. (*Id.* at PageID 97).

Prior to trial, Mr. McCormick moved through counsel to suppress all evidence obtained pursuant to an alleged invalid search warrant. (*Id.* at PageID 98-101). The State did not file a written response, and at a hearing on August 30, 2017, defense counsel withdrew the motion. (*Id.* at PageID 102). Mr. McCormick's counsel also moved to appoint an investigator, which the court granted. (*Id.* at PageID 103-05). Mr. McCormick separately filed a *pro se* "motion to dismiss all charges on the basis of insufficient evidence." (*Id.* at PageID 106-08). The State did not file a written response to the motion, and the trial court later denied the motion. (*Id.* at PageID 109).

After a change in trial counsel, Mr. McCormick's new counsel filed a demand for discovery, a demand for testimony, and a motion to suppress interrogation evidence, later withdrawn. (*Id.* at PageID 110-19). Mr. McCormick's new counsel also requested, and the trial court granted, funds for independent testing. (*Id.* at PageID 120-23). Counsel filed a motion to exclude various pieces of evidence. (*Id.* at PageID 124-25).

The case proceeded to trial and the jury convicted Mr. McCormick on all charges, including the firearm specifications. (*Id.* at PageID 130-31). Mr. McCormick subsequently filed a motion for acquittal or new trial (*Id.* at PageID 132-46), to which the State responded. (*Id.* at PageID 147-50). The trial court denied the motion. (*Id.* at PageID 152).

Before sentencing, the trial court merged the two murder convictions and one felonious assault conviction, resulting in a single murder conviction. (*Id.*). The trial court sentenced Mr. McCormick to a mandatory period of not less than fifteen years to life imprisonment for the murder conviction; a mandatory period of three years on the firearm specification to the murder conviction; and a definite, non-mandatory term of 30 months for having weapons while under disability. (*Id.* at PageID 153). The three years for the firearm specification conviction was ordered first and consecutive to the 15-year-to-life sentence imposed for the murder conviction. (*Id.*). The 30 months was to be served consecutive to both the three-year firearm specification and 15-year-to-life sentences, for a total term of twenty years and six months to life imprisonment. (*Id.*).

## C.     Direct Appeal

On July 28, 2018, Mr. McCormick's appellate counsel filed a notice of appointment (*Id.* at PageID 156-57) and a timely appeal notice in the Ninth District Court of Appeals (*Id.* at PageID 162). In his brief, Mr. McCormick raised two claims:

1.      The evidence in this case was insufficient as a matter of law to support the convictions.

2.      The verdicts in this case were against the manifest weight of the evidence.

(*Id.* at PageID 163-208). The State filed its brief (*Id.* at PageID 214), and on June 5, 2019, the Ninth District overruled Mr. McCormick's assignments of error and affirmed his convictions and sentences. (*Id.* at PageID 244-55; *see also State v. McCormick*, No. 29121, 2019 WL 2385648 (Ohio Ct. App. June 5, 2019)).

Mr. McCormick did not timely file an appeal to the Supreme Court of Ohio by the deadline of July 22, 2019. *See* Ohio Sup. Ct. R. Prac. 7.01(A)(1)(a)(i) & 3.03(A)(1).

7

**D.      Application to Reopen Direct Appeal**

On September 4, 2019, Mr. McCormick, acting *pro se,* filed an untimely Ohio Appellate

Rule 26(B) application to reopen his direct appeal due to ineffective assistance of appellate

counsel. (*Id.* at PageID 281-89). Mr. McCormick alleged his appellate counsel was

unconstitutionally ineffective for not raising the following claims on direct appeal:

> 1.      McCormick's rights protected under the 5th, 6th, and 14th Amendments
>         to the U.S. Const. were violated when trial counsel's actions were
>         prejudicial by failing to request cautionary instructions based on
>         misconduct by the prosecution.
>
> 2.      Trial counsel's performance was deficient for failing to object when
>         testimony by numerous state witnesses constituted impeachment by self-
>         contradiction in violation of Ohio Evidence Rule 612 & 613(8)(1).
>
> 3.      McCormick was denied his rights protected under the 5th, 6th, and 14th
>         Amendments to the U.S. Const. when counsel waived a hearing on his
>         motion to suppress evidence.

(*Id.* at PageID 284, 285, 287) (cleaned up). The State did not file a written response, and on

September 23, 2019, the Ninth District determined Mr. McCormick's application was untimely

with no explanation for the delay in filing, and thus denied the application to reopen his appeal.

(*Id.* at PageID 290).

Mr. McCormick did not timely file an appeal of this ruling to the Supreme Court of Ohio

and his filing deadline for doing so expired on November 7, 2019. *See* Ohio Sup. Ct. R. Prac.

7.01(A)(1)(a)(i) & 3.03(A)(1).

**E.      Petition to Vacate Judgment**

On June 10, 2019, Mr. McCormick filed a *pro se* Petition to vacate or set aside judgment of

conviction or sentence, raising the following claims:

1.  Defendant's due process was violated U.S.C.A. constitutional amendments 14. The conviction is circumstantial and the evidence is insufficient to sustain a verdict.

2.  Defendant's due process was violated U.S.C.A. constitutional amendments 14. A conviction based on legally insufficient evidence constitutes a denial of due process U.S. Constitutional Amendment 14. Circumstantial is defined as testimony. The[re] was consistent and repetitive testimony that no one knows who committed the crime. Darshawn T. McCormick's phone call record from Summit County jail, May 5, 2017 approximately 10:38 p.m. to Eric Allen will support this statement.

(*Id.* at PageID 291-94). Mr. McCormick also filed a motion for the appointment of counsel (*Id.* at PageID 295) and a motion for expert assistance (*Id.* at PageID 298). The State opposed both motions, and Mr. McCormick filed letters and an affidavit from Eric Allen in reply. (*Id.* at PageID 301-10).

On June 26, 2019, the court found Mr. McCormick's claims barred by *res judicata*, denied his Petition for postconviction relief, and dismissed his motions to appoint counsel and for expert assistance. (*Id.* at PageID 312-15). Mr. McCormick did not appeal this decision and his deadline for doing so expired August 26, 2019. *See* Ohio R. App. Proc. 4(A)(1) & 14(A).

**F.      Supreme Court of Ohio Appeal**

On August 13, 2019, Mr. McCormick filed an untimely *pro se* notice of appeal to the Supreme Court of Ohio, appealing the June 5, 2019 decision on his direct appeal and a motion for leave to file a delayed appeal alleging that he did not receive a copy of the June 5, 2019 appellate court decision until June 20, 2019. (*Id.* at PageID 259). The State filed a notice of appearance (*Id.* at PageID 277), but did not file any other written response. On October 15, 2019, the Supreme Court of Ohio denied Mr. McCormick's motion for leave to file a delayed appeal and dismissed the case. *State v. McCormick*, 132 N.E.3d 698 (Ohio 2019) (table).

9

Mr. McCormick did not timely file a Petition for certiorari in the United States Supreme Court and his filing deadline expired on January 3, 2020. *See* Sup. Ct. R. 13.

**G.     State Habeas**

On April 20, 2020, Mr. McCormick filed a *pro se* Petition for a writ of habeas corpus in the Ninth District and an indigency affidavit (*Id.* at PageID 316-42). On April 22, 2020, before the State responded, the state court dismissed the Petition because Mr. McCormick failed to comply with mandatory procedural filing requirements, having filed a federal application rather than a state application. (*Id.* at 343-45).

Mr. McCormick did not appeal the decision and his deadline for doing so expired on June 8, 2020. *See* Ohio Sup. Ct. R. Prac. 7.01(A)(1)(a)(i) & 3.03(A)(1). He did not attempt to correct the procedural error or refile.

FEDERAL HABEAS CORPUS

Mr. McCormick asserts the following grounds in his Petition:

**GROUND ONE:** The trial court violated Mr. McCormick's right to due process under *Tibbs v. Florida*, 457 U.S. 31 (1982), and *Jackson v. Virginia*, 443 U.S. 307 (1979).

**Facts in support:** Testifying witnesses Eric J. Allen, Deon Whitney and Janay P. Dancy were impeached by self-contraction; no witness saw Mr. McCormick with a gun the day of the shooting and no one pointed Mr. McCormick out of a photo array line up. In fact, the 911 call, which came in immediately following the murder, identified the shooter as wearing orange twice, and Mr. McCormick wore black and blue.

**GROUND TWO:** The trial court violated Mr. McCormick's Fifth, Sixth, and Fourteenth amendment rights when the prosecutor substituted her own testimony for that of a witness.

**Facts in support:** On May 16, 2018, the prosecutor stated that "Janiqua Singleton saw Darshawn T. McCormick with a gun." However, when the witness came forth to testify under oath to the contrary, Ms. Singleton stated "she never saw Mr.

McCormick with a gun." Mr. McCormick's defense counsel voiced no objection to the prosecutor's false statement to the jury, nor did the prosecutor move for a cautionary instruction based on the false statement. Due to the irregularity in the proceedings, Mr. McCormick was prevented from having a fair trial, which is plain error.

**GROUND THREE:** Mr. McCormick's life sentence violates the Eighth Amendment's prohibition against the imposition of cruel and unusual punishment.

**Facts in support:** Even if viewed in the light most favorable to the state, any rational trier of fact would not disregard the excited utterance of the 911 call in which someone else was identified by the caller. Deon Whitney, who made the 911 call, testified that the shooter was dark-skinned, and Mr. McCormick is light-skinned.

**GROUND FOUR:** Mr. McCormick's constitutional right to due process of law and the protection against the imposition of ex post facto law as guaranteed by the due process and ex post facto clauses of the Constitution were violated.

**Facts in support**: No man should be deprived of his life under the forms of law for an offense. This presumes, as well, evidence to support a charge requires proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt. The 911 call by Deon Whitney proves Mr. McCormick's innocence.

(ECF # 10, PageID 5-10) (cleaned up).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. McCormick's Petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be

given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Id.*; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably

12

applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state law and state procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and its rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03. To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001).

**Exhaustion of Available State Court Remedies.** A court may not grant a Petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such state process ineffective to protect the rights of the petitioner. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in which the petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d

789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default, discussed more fully below, rather than exhaustion applies. *Id.*

**Procedural Default.** There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default of a claim occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted by the petitioner failing to raise it in state court and pursue that claim through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.*

The Supreme Court has stated that "in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule,

federal habeas corpus review of a claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). A fundamental miscarriage of justice results from the conviction of one who is "actually innocent." *Murray*, 477 U.S. at 496.

A showing of cause requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Attorney neglect, ignorance, or inadvertence, however, does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient

under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman*, 501 U.S. at 752-755; *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A "fundamental miscarriage of justice" occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Id.* at 315. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**Claims Not Cognizable on Federal Habeas Review.** The Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due

Process Clause ... safeguards not the meticulous observance of state procedural prescriptions, but "the fundamental elements of fairness in a criminal trial."); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*citing Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

### DISCUSSION AND ANALYSIS

### I.   All four grounds for relief are procedurally defaulted.

All four grounds Mr. McCormick raises in his Petition are procedurally defaulted because they were not fairly presented at each and every level of the state courts. Further, he establishes neither cause and prejudice nor fundamental miscarriage of justice that would excuse the default.

As noted above, procedural default exists when the petitioner fails to raise a claim in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)). "Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition." *Baston*, 282 F. Supp. 2d at 661.

Mr. McCormick did not timely file a direct appeal to the Supreme Court of Ohio challenging the Ninth District's decision affirming his conviction and sentence. The Ninth District issued its decision on June 5, 2019. Under the Supreme Court of Ohio's Rules of Practice, Mr. McCormick had 45 days to file a notice of appeal. He did not do so until August 13, 2019, 69 days later, leading that Court to deny the appeal as untimely. (ECF #8-2 at PageID 256).

The same is true for his Application to Reopen. (*Id.* at PageID 281). The Ninth District denied the application on September 23, 2019 (*Id.* at 290), and he did not timely file an appeal to the Supreme Court of Ohio before the November 7, 2019 deadline.

Similarly, Mr. McCormick's Motion to Vacate or Set Aside Judgment of Conviction or Sentence was dismissed on June 26, 2019. (*Id.* at PageID 312-15). Mr. McCormick did not appeal the decision within the 30 days prescribed by Ohio App.R. 4(A)(1), when the filing deadline expired on August 26, 2019. He also did not appeal to the Supreme Court of Ohio the decision dismissing his state habeas Petition.

 "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered

19

in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806; *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards*, 529 U.S. at 451-52. Mr. McCormick does challenge his appellate counsel's assistance in his Application to Reopen with respect to his failure to raise the issues that would become Grounds One, Two, and Four of this federal habeas Petition. Therefore, his ineffective assistance claim is defaulted with respect to Ground Three, which challenges his sentence as cruel and unusual. This argument was never presented to any state court.

But the remaining three grounds are also procedurally defaulted, because the ineffective assistance claim underlying them is also defaulted. Again, "[i]ssues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition." *Baston*, 282 F. Supp. 2d at 661. The Ninth District rejected Mr. McCormick's Application to Reopen challenging assistance of appellate counsel as untimely with no explanation for the delay in filing. Mr. McCormick did not appeal this decision to the Supreme Court of Ohio, and his filing deadline expired on November 7, 2019. Thus, his ineffective assistance of appellate counsel claims cannot serve as cause to excuse his procedural default on the claims themselves because the ineffective assistance claims were not appealed and therefore themselves are defaulted.

Finally, Mr. McCormick does not advance any claim that a fundamental miscarriage of justice will occur if this Court does not consider the merits of his claims. In particular, Mr. McCormick has not submitted evidence or argument demonstrating actual innocence.

Because all four grounds presented in the Petition are procedurally defaulted, and I recommend Mr. McCormick's Petition be dismissed.

## II. Even if considered on their merits, none of the grounds for relief support habeas relief.

Even if they were not procedurally defaulted, all four of Mr. McCormick's grounds for relief are meritless because they fail to assert valid Constitutional claims.

### A. Ground One

In Ground One, Mr. McCormick argues the trial court violated his right to due process under *Tibbs v. Florida*, 457 U.S. 31 (1982), and *Jackson v. Virginia*, 443 U.S. 307 (1979). In support, he alleges that testifying witnesses Eric J. Allen, Deon Whitney, and Janay P. Dancy were impeached by self-contraction; no witness saw Mr. McCormick with a gun the day of the shooting and no one pointed him out of a photo array line up; the 911 call immediately following the murder identified the shooter as wearing orange twice, and Mr. McCormick wore black and blue. (ECF #5 at PageID 5).

*Tibbs* held that reversal of a jury conviction based on the weight of the evidence does not bar retrial under the Double Jeopardy Clause. *Tibbs*, 457 U.S. at 46. *Tibbs* is inapplicable here because Mr. McCormick's convictions were not reversed or remanded, and the Double Jeopardy Clause is not implicated.

*Jackson* specified the requirements when habeas petitioners challenge convictions on sufficiency grounds, abrogating the "no evidence" standard of *Thompson v. Louisville*, 362 U.S. 199

(1960). *Jackson*, 443 U.S. at 319. *Jackson* held that a habeas court must consider not whether there was *any* evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. *Id.*

Based on the facts in support, Mr. McCormick appears to bring a challenge under *Jackson* because he was convicted with circumstantial evidence rather than direct evidence that he was the person who shot the victim. But conviction by circumstantial evidence is not *de facto* insufficient. Indeed, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006). The Supreme Court has explained that circumstantial evidence is "intrinsically no different from testimonial evidence" and that both "may in some cases point to a wholly incorrect result." *Tucker v. Palmer*, 541 F.3d 652, 657 (6th Cir. 2008) (citing *Holland v. United States*, 348 U.S. 121, 140 (1954). "Yet . . . [i]n both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." *Tucker*, 541 F.3d at 657 (citing *Holland*, 348 U.S. at 137-38). To accomplish this, "the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." *Tucker*, 541 F.3d at 657 (citing *Holland*, 348 U.S. at 138).

Therefore, the only question is whether there was sufficient evidence to convict Mr. McCormick, regardless of whether the evidence was circumstantial. Evidence is sufficient where, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v.*

*Craft*, 495 F.3d 259 (6th Cir. 2007) (citing *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007) and *Jackson*, 443 U.S. at 319).

This Court must defer to the state appellate court's interpretations of Ohio law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "Even if the federal court concludes that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, a federal habeas court must still defer to the state appellate court's sufficiency determination, as long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing 28 U.S.C. §2254(d)(2)).

In its last reasoned opinion, the Ninth District determined the evidence was constitutionally sufficient to convict Mr. McCormick:

> {¶5} In his first assignment of error, McCormick argues that his convictions are based on insufficient evidence because the State failed to prove identity. He asserts that the evidence, if believed, only showed that he was in the vicinity of the victim's murder, not that he perpetrated it. Upon review, we do not agree that his convictions are based on insufficient evidence.

> {¶6} Whether the evidence in a case is legally sufficient to sustain a conviction is a question of law that this Court reviews de novo. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. Although the standard of review is de novo, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.

> {¶7} "The identity of a perpetrator must be proved by the State beyond a reasonable doubt." *State v. Moorer*, 9th Dist. Summit No. 27685, 2016-Ohio-7679, ¶ 24. "As with any other element, * * * identity may be proved by direct or circumstantial

23

evidence, which do not differ with respect to probative value." *State v. Taylor*, 9th Dist. Summit No. 27273, 2015-Ohio-403, ¶ 9. Because McCormick limits his sufficiency challenge to the issue of identity, we confine our review to that issue. *See State v. Webb*, 9th Dist. Summit No. 27424, 2015-Ohio-2380, ¶ 6.

* * *

{¶18} McCormick argues that his convictions are based on insufficient evidence because the evidence against him was entirely circumstantial in nature and only showed that he was in the vicinity when the victim was shot. He notes that no one claimed to have witnessed the actual shooting and multiple witnesses gave inconsistent statements at different points in time. Because the State failed to prove his identity as the shooter beyond a reasonable doubt, he argues, he is entitled to a reversal of his convictions.

{¶19} Viewing the evidence in a light most favorable to the State, a rational trier could have concluded that the State proved, beyond a reasonable doubt, that McCormick perpetrated the crimes with which he was charged. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The mechanic who was present when the shooting occurred indicated that the victim was shot by the man matching McCormick's description. E.A. also testified that the bullets came from his left, where McCormick was standing, and theorized that McCormick had shot the victim because he wanted to make a name for himself. The jury heard testimony that McCormick fled from the police, so they could have concluded that his flight evidenced a consciousness of guilt. *See State v. Nichols*, 9th Dist. Summit No. 24900, 2010-Ohio-5737, ¶ 11, quoting *State v. Taylor*, 78 Ohio St.3d 15, 27 (1997). Moreover, they heard testimony that: (1) McCormick removed his sweatshirt at J.D.'s apartment directly after the shooting, (2) he asked her for bleach before leaving the sweatshirt there, (3) his sweatshirt had traces of gunshot residue on its cuffs in spite of his claim that he was already across the street when the shooting occurred, and (4) he had at his residence a partially loaded magazine containing the same brand and caliber of bullets used to kill the victim.

{¶20} Although the evidence against McCormick was circumstantial in nature, the State may prove identity "by direct or circumstantial evidence, which do not differ with respect to probative value." *Taylor*, 2015-Ohio-403, at ¶ 9. Further, even if the State's witnesses gave inconsistent statements, the question of sufficiency does not concern itself with the resolution of evidentiary conflicts or credibility determinations. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7. A sufficiency review calls for an appellate court to view evidence in a light most favorable to the State and to determine only whether the State satisfied its burden of production. *State v. Romes*, 9th Dist. Medina No. 14CA0095-M, 2016-Ohio-5772, ¶ 16. Upon review, McCormick has not shown that the State failed to

24

produce sufficient evidence on the issue of identity. Thus, his first assignment of error is overruled.

*McCormick*, 2019 WL 2385648 at *1-2, *4.

Mr. McCormick has not rebutted the Ninth District's factual findings by clear and convincing evidence, so this Court must presume the Ninth District's factual findings are correct. *See* 28 U.S.C. § 2254(e)(1); *Moore*, 708 F.3d at 775; *Mitzel*, 267 F.3d at 530. He has not presented any argument that the Ninth District's decision is contrary to, or an unreasonable application of, clearly established federal law. Therefore, deference is warranted to the Ninth District's determination that there was sufficient evidence to convict Mr. McCormick, making his first ground for relief without merit.

### B.      Ground Two

Next, Mr. McCormick argues the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights when the prosecutor substituted her own testimony for that of a witness. (ECF #5, PageID 7).  Specifically, he argues the prosecutor stated, "Janiqua Singleton saw Darshawn T. McCormick with a gun," but when Ms. Singleton testified at trial, she stated she never saw Mr. McCormick with a gun. (*Id.*). Mr. McCormick argues his defense counsel did not object to the prosecutor's false statement to the jury, nor did the prosecutor move for a cautionary instruction based on the false statement. As a result, Mr. McCormick believes he was prevented from having a fair trial. (*Id.*).

The test for prosecutorial misconduct is whether the conduct complained of deprived the accused of a fair trial; the relevant analysis concerns the fairness of the trial rather than the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Prosecutorial misconduct can merit habeas relief only if the prosecutor's remarks render the trial so unfair as to be a denial

of due process. *Moore*, 708 F.3d at 799 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 634-45 (1974)). A prosecutor's remarks "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Young*, 470 U.S. 1, 11-12 (1984); *Hall v. Vasbinder*, 563 F.3d 222, 234 (6th Cir. 2009); *Lundy v. Campbell*, 888 F.2d 467, 472 (6th Cir. 1989), *cert. denied*, 495 U.S. 950 (1990). A prosecutor "necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quoting *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008)), *cert. denied*, 559 U.S. 1058 (2010). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008), *cert. denied*, 556 U.S. 1187 (2009).

Neither Mr. McCormick nor the State identify where in the record the alleged statements about Janiqua Singleton seeing Mr. McCormick with a gun were made, and my repeated efforts to locate any such statements proved fruitless.[2] However, even if the prosecutor made the statement Mr. McCormick describes, such statement, examined within the context of the entirety of the trial, would not have rendered the trial so unfair as to deny due process to Mr. McCormick. Ms. Singleton acknowledged during her testimony that she did not see the shooting. (ECF #8-2 at

---

[2]     During the State's opening statement, the prosecutor stated as follows: "Janiqua Singleton, her evidence we anticipate will be the fact that, you know, Javanta didn't have a beef with any of these people, Javanta didn't know the defendant, Javanta didn't know Mar'sean, Javanta just knew of Eric Allen because he was dating Janaya. But she heard the shots, she came running out, and she saw the three guys running in that direction over to Toby Terrace." (ECF #8-2 at PageID 559-60). During the State's closing argument, the prosecutor argued as follows: "You heard from Janiqua. She didn't see anything but she saw the aftermath and three men running away and which direction they ran." (*Id.* at PageID 1452). Neither of these statements suggest in any way that Ms. Singleton saw Mr. McCormick with a gun.

PageID 681) ("Q: Did you actually see the shooting. A: No."). Defense counsel reiterated this during her closing argument to the jury. (*Id.* at 1490) ("Janiqua Singleton testified as to—you know, emotional testimony as to what happened that day when her boyfriend was shot. She didn't see the shooting. She said she didn't see the shooting . . . ."). Thus, the jury could properly determine that any assertion by the prosecutor to the contrary did not reflect the evidence presented by the witness herself. Upon considering the single alleged misstatement by the prosecutor within the context of the entire trial that lasted multiple days, I do not find the complained of statement—if it was actually made—so infected the trial as to constitute prejudicial error that denied Mr. McCormick due process. *See Young*, 470 U.S. at 11 ("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.").

Accordingly, I conclude Mr. McCormick's second ground for relief is without merit.

## C.    Ground Three

Third, Mr. McCormick argues his life sentence violates the Eighth Amendment's prohibition against the imposition of cruel and unusual punishment. However, his facts in support do not explain the injustice of his sentence, but rather highlight more evidentiary determinations Mr. McCormick disagrees with: "even if viewed in the light most favorable to the state, any rational trier of fact would not disregard the excited utterance of the 911 call in which someone else was identified by the caller. Deon Whitney, who made the 911 call, testified that the shooter was dark-skinned, and Darshawn T. McCormick is light-skinned." (ECF #5 at PageID 8).

The Eighth Amendment prohibits cruel and unusual punishments, and this restriction binds the states through the Fourteenth Amendment's Due Process Clause. *Robinson v. California*,

370 U.S. 660, 675 (1962) (Douglas, J., concurring). To pass Eighth Amendment scrutiny, the

Supreme Court has determined that strict proportionality between a crime and its punishment is

not required. *Harmelin v. United States*, 501 U.S. 957, 959-960 (1991). Applying the *Harmelin*

"narrow proportionality principle," the Sixth Circuit holds that "only an extreme disparity

between crimes and sentence offends the Eighth Amendment." *United States v. Brooks*, 209 F.3d

577, 584 (6th Cir.), *cert. denied*, 531 U.S. 882 (2000).

A sentence falling within the maximum penalty set by state statute generally does not

constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000); *see

also United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003). A sentence is authorized by law if it

does not exceed the maximum terms that the trial court is permitted to impose by statute. *See

Kelley v. Brunsman*, 625 F. Supp. 2d 586, 602 (S.D. Ohio Feb. 24, 2009), *report and recommendation

adopted*, 625 F. Supp. 2d 586 (S.D. Ohio June 9, 2009).

For his murder conviction under Ohio Rev. Code. § 2903.02(A), Mr. McCormick was

sentenced to a mandatory period of not less than fifteen years to life imprisonment. Pursuant to

Ohio Rev. Code. § 2929.02, "whoever is convicted of or pleads guilty to murder in violation of

section 2903.02 of the Revised Code shall be imprisoned for an indefinite term of fifteen years to

life." Ohio Rev. Code § 2929.02(B)(1). Similarly, the firearm specification required a consecutive

sentence by law. *See* Ohio Rev. Code § 2929.41. The sentence imposed for having weapons while

under disability—30 months—is not a mandatory term pursuant to Ohio Rev. Code §§ 2929.13(F),

2929.14(D)(3), or 2925.01.

Mr. McCormick makes no developed argument as to why his sentence—which was 20 years,

6 months (ECF #8-2 at PageID 253) and not the life sentence he alleges—is cruel and unusual,

28

contrary to law, or has otherwise deprived him of due process or equal protection. Without more, and with particular consideration to the fact that the sentences fall within the appropriate ranges set forth in Ohio's sentencing statutes, I find Mr. McCormick's third argument without merit.

### D.      Ground Four

Finally, Mr. McCormick argues his "constitutional right to due process of law and the protection against the imposition of ex post facto law as guaranteed by the due process and ex post facto clauses of the Constitution were violated." (ECF #5, PageID 10). In support, he writes:

> No man should be deprived of his life under the forms of law for an offense. This presumes, as well, evidence to support a charge requires proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt. The 911 call by Deon Whitney proves Mr. McCormick's innocence.

(ECF #8-2 at PageID 10).

The Ex Post Facto Clause, which embodies a presumption against the retroactive application of new laws, prohibits any law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. *Ruhlman v. Brunsman*, 664 F.3d 615, 619 (6th Cir. 2011). Mr. McCormick identifies no ex post facto law imposed on him. Without knowing what law Mr. McCormick believes was improperly imposed, I cannot properly evaluate the merits of his argument.

Substantively, a federal habeas Petition must "specify all the grounds for relief available to the petitioner; state the facts supporting each ground; and state the relief requested." Rule 2(c) of the Rules Governing Section 2254 Cases. Even in ordinary civil proceedings, a complaint must "provide fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Mayle v. Felix*, 545 U.S. 644, 655 (2005), (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Habeas

Corpus Rule 2(c) is more demanding. It provides that the Petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Mayle*, 545 U.S. at 655 (citations omitted).

Contrary to the requirements of Habeas Rule 2, Mr. McCormick's Petition and Traverse do not explain the facts supporting the basis for Ground Four, even after the State's Return of Writ identified this omission and argued for dismissal of Ground Four because of such non-compliance. (ECF #8 at PageID 81). Without more, I am unable to assess Mr. McCormick's argument and therefore recommend it, too, be dismissed as without merit.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would

succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. McCormick has failed to make a substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether the four grounds are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court not grant Mr. McCormick a Certificate of Appealability with respect to any ground.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, I recommend Mr. McCormick's Petition be **DISMISSED**. I further recommend Mr. McCormick not receive a Certificate of Appealability.

Dated: April 5, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v.*

31

*Dahl,* 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green,* No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard,* 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega,* 924 F.3d 868, 878-79 (6th Cir. 2019).